# Lupp *v.* Adams County House of Employment, Appellant.

*Constitutional law—Police power—Infectious disease—Art. II, sec. 18, of the constitution of Pennsylvania—Act of May 7, 1907, P. L. 170—Pasteur treatment.*

1. The Act of May 7, 1907, P. L. 170, amending the Act of March 31, 1905, P. L. 192, and providing for medical treatment by poor districts for hydrophobia is a proper exercise of the police power of the state, and does not contravene art. III, sec. 18, of the constitution of Pennsylvania, relating to appropriations for charitable or benevolent purposes.

*Poor law—Medical attention—Pasteur treatment—Act of May 7, 1907, P. L. 170.*

2. A father cannot recover from a poor district the cost of Pasteur treatment for his daughter, where it appears that he had taken all the steps requisite for the treatment without any application to the poor directors for medical aid and without their knowledge, consent or direction and without any emergency appearing. In such a case it is immaterial that the father after he had made all preparations for the treatment had procured another person to telephone to the attorney of the poor directors to ask whether the board would pay for the treatment.

3. One who seeks to make himself the creditor of a poor district by voluntarily doing that which under prescribed conditions it is the duty of the poor district to do, has the burden of showing that the prescribed conditions were complied with.

*Practice, C. P.—Case stated—Facts—Evidence.*

4. It is essential that a case stated should set forth the facts which give rise to the question presented for decision, and not merely the evidence from which such facts may be inferred.

Submitted March 9, 1914. Appeal, No. 11, March T., 1914, by defendants, from judgment of C. P. Adams Co., April T., 1913, No. 408, for plaintiff on case stated in suit of R. H. Lupp v. Directors of the Poor and of the House of Employment of Adams County. Before RICE, P. J., ORLADY, HEAD, PORTER, HENDERSON, KEPHART and TREXLER, JJ. Reversed.

Case stated to determine liability of a poor district for Pasteur treatment.   Before SWOPE, P. J.

The case stated was as follows:

That on December 23, 1912, Ada M. Lupp, the daughter of R. H. Lupp, both of whom reside in Menallen township, Adams county, Pa., was bitten by a cat. As soon as R. H. Lupp learned that his daughter had been so bitten, he called in Dr. Merriman of Arendtsville, who killed the cat and sent its head to the State Health Department at Harrisburg for examination. Late on the night of December 26, 1912, Dr. Merriman received a telegram from the State Health Department stating that the cat had rabies or hydrophobia. Dr. Merriman at once telephoned this news to R. H. Lupp and advised that the daughter be given the Pasteur treatment as soon as possible. On the morning of December 27, 1912, R. H. Lupp telephoned to S. McC. Eicholtz, one of the commissioners of Adams county, and applied for proper medical attention for his daughter, but was informed by Eicholtz that the matter was in the hands of the directors of the poor.

On the same morning, December 27, 1912, R. H. Lupp took his said daughter, Ada M. Lupp, to Biglerville, where they boarded the 11 o'clock morning train for the purpose of taking his daughter to Marietta for the Pasteur treatment. As the train was about to start, R. H. Lupp called G. W. Koser, who was standing by, and stating that he did not have time to do so himself, requested the said Koser to make application for him to the proper officer of the poor directors for the Pasteur treatment for his daughter.

That within two hours after the said train left Biglerville, G. W. Koser telephoned to C. E. Stahle, Esq., attorney for the defendants herein, and the proper officer of the poor district, and stated to him that the said Ada M. Lupp had been bitten by a cat, that the head of the said cat had been sent to Harrisburg by Dr. Merriman where it was found by the proper au-

thorities that the said cat suffered from rabies, and that the said Ada M. Lupp had been taken to Marietta that morning by her father, upon the advice of Dr. Merriman, there to be given the Pasteur treatment, and asked him whether under the circumstances the said board of directors of the poor would pay the bill for the treatment at Marietta; to which the said Stahle, representing the said board of directors of the poor, replied that he would advise the said board not to make payment of the bill for said treatment. No proof was offered to the said Stahle of the statements made by the said Koser, nor has any proof of the said statements been offered to the said directors of the poor since. That no order of relief was issued by a justice of the peace authorizing and directing the said directors of the poor to furnish medical treatment to the said Ada M. Lupp, before the said Ada M. Lupp was taken by her father to Marietta where she took the Pasteur treatment, nor has such an order of relief been received by the directors of the poor, or their attorney, since.

That the said R. H. Lupp, with his daughter, arrived at Marietta about two hours after the said telephone communication between G. W. Koser and C. E. Stahle, and at once took his daughter to the Pasteur Institute at that place, where he then contracted for the treatment to be given her, with Dr. H. M. Alexander & Co., the proprietors of said institute, where she remained under said treatment for eighteen days.

The bill of Dr. H. M. Alexander & Co., for said medical attention which included the Pasteur treatment, was $92.50, which bill was paid by R. H. Lupp, on January 11, 1913, and a receipt taken therefor. That payment of said bill having been refused by the said directors of the poor, an action in assumpsit was brought by said R. H. Lupp, to the above number and term, against the said directors of the poor, on April 16, 1913, and an appearance entered and service waived by C. E. Stahle, attorney for said defendants.

If the court is of the opinion that the act of May 7, 1907, entitled, "An Act to amend sec. 1 of 'An Act providing for necessary medical attention to needy persons who may be in danger of suffering from hydrophobia,' approved the 31st day of March, 1905, so as to include all persons who may apply for aid, and providing that the costs of said medical attention shall be paid by the several poor districts within this commonwealth," is constitutional; and if under the facts herein stated the court is of the opinion that the directors of the poor and of the house of employment of Adams county is liable for and owes to R. H. Lupp, the sum of $92.50, claimed by the plaintiff and denied by the defendant, then judgment to be entered for the plaintiff and against the defendant for the sum of $92.50, with costs of this action; but if not then judgment to be entered for defendant, etc.

The court entered judgment for plaintiff.

*Error assigned* was in entering judgment for plaintiff on case stated.

*C. E. Stahle,* for appellant.—There was no application for medical aid: Mason v. Carbondale Poor Dist., 20 Pa. Dist. Rep. 580; Kochenaur v. Cumberland County Poor Dist., 16 Pa. Dist. Rep. 581; Salsbury v. Philadelphia, 44 Pa. 303; Blew v. Ryan Twp., 42 Pa. Superior Ct. 510.

The plaintiff cannot recover on the ground of emergency. The act of 1907 is unconstitutional: Moneyer v. Home of Destitute, 20 Pa. Dist. Rep. 945.

*J. Donald Swope,* for appellee.

OPINION BY RICE, P. J., July 15, 1914:

This action of assumpsit was brought to recover the amount the plaintiff expended for medical attention, including the Pasteur treatment, given his daughter, who had been bitten by a cat which was suffering from rabies. A case stated was agreed upon and submitted to the court, in which it was stipulated that, if the court

was of opinion that the Act of May 7, 1907, P. L. 170, is constitutional, and that, under the facts stated, the defendant district is liable for and owes to the plaintiff the sum claimed, judgment therefor should be entered in his favor, but, if not, judgment should be entered for the defendant.

The act of 1907 is an amendment of the Act of March 31, 1905, P. L. 92, and reads as follows: "That in each and every county of this commonwealth it shall be the duty of the proper officers of the several poor districts, in such counties, to provide all persons who may apply for aid in their said several districts, who may be bitten by dogs or other animals suffering from hydrophobia or rabies, with the proper medical attention to prevent the development of the disease in the person or persons so bitten, which medical attention may include the treatment known as the Pasteur treatment."

It is a warrantable conclusion that the purpose of this legislation is to prevent the spread of an infectious disease, by holding out inducement to those in whom there is a danger of it being developed to submit to proper medical treatment. And doubtless the legislature deemed the measure warranted by the facts within its knowledge. Thus viewed, we cannot agree with appellant's counsel that it is in contravention of sec. 18, art. III, of the constitution. It is sufficiently apparent that the purpose is such a public one as brings the enactment within the police power, and, if the provisions of the act are observed in practice, it is not clear that any unconstitutional result will flow from it.

But, coming to the second question, it is to be observed that the act does not impose on the poor district the absolute duty to reimburse any party who has expended money for the purpose mentioned. Its duty as defined by the act is to provide proper medical attention, which may include the Pasteur treatment, and that duty does not arise, under the terms of the act, until the person bitten applies for aid. Doubtless the

application may be made through another, as, in this instance, the father; but there must be an application to the proper authorities, and it must be made by or on behalf of the person needing the medical attention. Mere notification by an apparent stranger that the person needs such attention is not such compliance with the statute as makes it the duty of the directors to act. It appears here that the plaintiff, by the advice of a physician, had determined to submit his daughter to the Pasteur treatment, and, after they were on their way to a distant hospital for that purpose, another person, at his request, telephoned to the attorney of the poor directors, who, it is admitted, was the proper officer of the district, regarding the matter. It does not affirmatively appear by the case stated, that this person told the attorney, or that the latter knew, he was making an application for aid on behalf and by authority of the plaintiff or his daughter, nor did he in fact make an unequivocal application. What he did, after stating some of the facts, was to tell the attorney that the daughter had been taken by her father to Marietta that morning, there to be given the Pasteur treatment, and asked him whether, under the circumstances, the board of directors would pay the bill for the treatment at Marietta, to which the attorney replied that he would advise the board not to pay the bill. In this communication the directors were not called upon or permitted to exercise any discretion as to what would be proper medical attention under the circumstances, or as to whether it would include the Pasteur treatment, or as to where it should be administered. These matters had been determined by the plaintiff and had been put beyond the control of the directors before the subject was called to their attention. It is claimed there was an emergency which prevented an earlier application. But this fact, even if it could be pleaded as an excuse, is not distinctly admitted in the case stated, and we cannot agree that it is necessarily implied from the facts

that are stated.   It is essential that a case stated should set forth the facts which give rise to the question presented for decision, and not merely the evidence from which such facts may be inferred: Schuylkill Co. v. Shoener, 205 Pa. 592; Bertram v. Petrovsky, 49 Pa. Super. Ct. 426, and cases there cited. ' Moreover, the communication to the attorney of the poor district was not a distinct demand, or even request, that the directors provide proper medical attention, or that they sanction the plaintiff's action; but might properly be interpreted by them as a mere inquiry whether they would pay the bill for the expense he was about to incur.   This was not, either in form or in substance, such an application as the act makes a prerequisite to the imposition of the duty on the poor district.   And when it is remembered that the act is not confined in its operation to "needy" persons, as was the act of 1905, it is important that its provision, that application be made to the poor district, be not weakened by lax construction.   For, as has been said of the act of 1905, so it may be said, with greater force, of the act of 1907, were it left to the discretion of any one to send a patient to a distant hospital, and thereby render the poor district liable, it is easy to conceive of abuses which might arise: Kochenaur v. Cumberland County Poor Directors, 16 Pa. Dist. Rep. 581.   One who seeks to make himself the creditor of a poor district, by voluntarily doing that which under prescribed conditions it is the duty of the poor district to do, has the burden of showing that the prescribed conditions were complied with. Taking into consideration the facts that are presented, and as they are presented, and bearing in mind that we cannot aid them by any inference of other facts, our conclusion is that they do not establish an obligation on the part of the poor district to reimburse the plaintiff for the expenditure he voluntarily made.

The judgment is reversed and is now entered for the defendant.